UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASTAWAYS BACKWATER CAFÉ, INC.,

    Plaintiff,

vs.             Case No. 2:05-cv-273-FtM-29SPC

SIMONE MARSTILLER, Secretary of the Department of Business and Professional Regulations, Division of Alcoholic Veverages and Tobacco, State of Florida; PAT PARMER, Director, Division of Alcoholic Beverages and Tobacco of the Department of Business & Professional Regulation, State of Florida; JOHN O. AGWUNOBI, Secretary, Dept. Of Health, State of Florida; GEOFF LUEKEMANN, Director, Division of Hotels & Restaurants of the Dept. Of Business & Professional Regulations, State of Florida,

    Defendants.
_____

**OPINION AND ORDER**

  This matter comes before the Court on defendants' Motion to Dismiss Amended Complaint (Doc. #19), to which plaintiff filed a Memorandum in Opposition (Doc. #22). Defendants filed supplemental authority (Docs. #27, #28, 30), which plaintiff opposed (Doc. #29).

**I.**

  In deciding a motion to dismiss, the Court must accept all factual allegations in the Amended Complaint as true and take them in the light most favorable to plaintiff. Christopher v. Harbury,

536 U.S. 403, 406 (2002); Doe v. Moore, 410 F.3d 1337, 1342 (11th Cir. 2005). The Amended Complaint (Doc. #17) alleges that plaintiff Castaways Backwater Café, Inc. (plaintiff or Castaways) owns and operates a restaurant in Collier County, Florida. Castaways asks the Court to declare the Florida Clean Indoor Air Act (FCIAA), FLA. STAT. § 386.201 *et seq.*, unconstitutional as a violation of the Fifth and Fourteenth Amendments to the United States Constitution. The Amended Complaint names as defendants Simone Marstiller, Pat Parmer, Dr. M. Rony Francois, and Geoff Luebkemann (collectively, "defendants") in their official capacities as State of Florida officials who enforce the FCIAA.

Plaintiff asserts that the defendants are attempting to enforce the FCIAA and prevent plaintiff from allowing its patrons to smoke in its restaurant. The Amended Complaint alleges that the FCIAA is unconstitutional because: (1) It contains exceptions to its no-smoking-in-enclosed-workplaces provision, instead of making the smoking ban universal in its workplace application (Doc. #17, ¶ XII); (2) some exceptions are based solely on economic considerations, and were enacted to grant special economic privilege to those holding Florida liquor licenses (id., ¶ IX); and (3) the exceptions are based on irrational logic, and without any legitimate interest or rational or plausible reasons (id., ¶¶ IX, XII). The Amended Complaint asserts that applying the FCIAA to plaintiff's business "is arbitrary, capricious, irrational, violates substantive due process, bears no reasonable relation to

-2-

public health safety or welfare and is therefore void." (Id. at 5.)

**II.**

In 2002 a citizen initiative sought to amend the Florida Constitution by adding a provision banning tobacco smoking in enclosed workplaces. The proposed text to Section 20, Art. X of the Florida Constitution was:

> (a) **Prohibition.** As a Florida health initiative to protect people from the health hazards of second-hand tobacco smoke, tobacco smoking is prohibited in enclosed workplaces.
>
> (b) **Exceptions.** As further explained in the definitions below, tobacco smoking may be permitted . . . in retail tobacco shops, designated smoking guest rooms at hotels or other public lodging establishments; and stand-alone bars.

The citizen initiative included definition of terms, Section 20(c), including "stand-alone bar." The Florida Supreme Court upheld the ballot initiative against a legal challenge, <u>Advisory Opinion to Atty. Gen. Re: Protect People From the Health Hazards of Second-Hand Smoke</u>, 814 So. 2d 415 (Fla. 2002), and in due course the initiative was passed in a general election. As required by the initiative, Section 20(d), Art. X, Florida Constitution, the Florida legislature enacted a statute to implement this constitutional initiative.

The FCIAA was enacted effective July 1, 2003, to "protect people from the health hazards of secondhand tobacco smoke and to implement the Florida health initiative in § 20, Art. X of the

State Constitution." Fla. Stat. § 386.202. After defining terms, Fla. Stat. § 386.203, the FCIAA provides that "[a] person may not smoke in an enclosed indoor workplace, except as otherwise provided in s. 386.2045." Fla. Stat. § 386.204. Section 386.2045(1)-(6) allows tobacco smoking in a (1) private residence (with certain exceptions); (2) retail tobacco shop; (3) designated smoking guest room; (4) stand-alone bar; (5) smoking cessation program, medical or scientific research; and (6) customs smoking room. Of particular relevance to this case is the "stand-alone bar," which is defined as:

> any licensed premises devoted during any time of operation predominantly or totally to serving alcoholic beverages, intoxicating beverages, or intoxicating liquors, or any combination thereof, for consumption on the licensed premises; in which the serving of food, if any, is merely incidental to the consumption of any such beverage; and the licensed premises is not located within, and does not share any common entryway or common indoor area with, any other enclosed indoor workplace, including any business for which the sale of food or any other product or service is more than an incidental source of gross revenue. A place of business constitutes a stand-alone bar in which the service of food is merely incidental in accordance with this subsection if the licensed premised derives no more than 10 percent of its gross revenue from the sale of food consumed on the licensed premises.

Fla. Stat. § 386.203(11).

### III

As a preliminary matter, defendants contend that plaintiff's claim is not ripe because plaintiff cannot show that it has sustained, or is in immediate danger of sustaining, a direct injury as a result of the FCIAA. (Doc. #19, pp. 1-2.) Moreover,

defendants assert that plaintiff currently enjoys the exemptions it challenges, and therefore what plaintiff seeks is essentially an "advisory opinion as to the propriety of indoor smoking under any circumstances." (Id. at 2.)

The issue of ripeness raises basic questions of jurisdiction that cannot be waived and goes to the very heart of the "case or controversy" requirement of Article III. Florida Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health and Rehabilitative Servs., 225 F.3d 1208, 1227 n.14 (11th Cir. 2000). "To determine whether a claim is ripe . . . we must examine whether there is sufficient injury to meet Article III's requirement of a case or controversy, and if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete to permit effective decision-making by the court." Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1315 (11th Cir. 2000) (internal quotations and citations omitted). See also Nat'l Adver. Co. v. City of Miami, 402 F.3d 1335, 1339 (11th Cir. 2005).

The Court finds that this case is ripe for adjudication and that plaintiff alleges sufficient injury in the Amended Complaint to satisfy the case or controversy requirement. The Amended Complaint alleges that defendants "are attempting to enforce" the FCIAA and "to prevent Plaintiff from allowing its patrons to smoke in the premises wherein its business is conducted." (Doc. #17, pp. 2-3.) The Amended Complaint also alleges that "[i]n order to adapt

its business to the statute's requirements, the plaintiff would either lose 90% of its patrons, or apply for a bar license to serve alcohol and discontinue service of food over 10%. Both alternatives will cause Plaintiff serious financial damages and loss of its very valuable business." (Id. at 5.) Additionally, enforcement of the FCIAA includes the imposition of monetary civil penalties. FLA. STAT. § 386.207. The Court concludes that these allegations are sufficient to establish, for purposes of a motion to dismiss, that the case is ripe for adjudication.

**IV.**

The Amended Complaint alleges violations of the Substantive Due Process Clause and the Equal Protection Clause of the United States Constitution. While the parties focus on the equal protection claim, the Court addresses both constitutional issues. For the reasons set forth below, the Court concludes that neither ground states a claim upon which relief may be granted.

**A.**

The United States Constitution guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. The substantive due process component "protects fundamental rights that are so 'implicit in the concept of ordered liberty' that 'neither liberty nor justice would exist if they were sacrificed.'" Moore, 410 F.3d at 1342-43 (quoting Palko v. Connecticut, 302 U.S. 319,

325 (1937)). Such fundamental rights are "those guaranteed by the Bill of Rights as well as certain 'liberty' and privacy interests implicit in the due process clause and the penumbra of constitutional rights." Moore, 410 F.3d at 1343. The special "liberty" interests include "the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." Id. (citation omitted). The Supreme Court has been very reluctant to recognize new fundamental rights. Id. (citation omitted).

In analyzing a substantive due process claim, the Court must first craft a careful description of the asserted right. The Court then determines whether the asserted right is one of the fundamental rights and liberties which, viewed objectively, are deeply rooted in the Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Id. (citations and quotations omitted).

The Amended Complaint contains the required careful description of the asserted right. The right asserted by plaintiff is the right of a public restaurant to allow its patrons to smoke in its business premises. (Doc. #17, ¶ VIII.)

The next question is whether the asserted right to allow patrons to smoke in a public restaurant is "deeply rooted in this Nation's history and tradition, and implicit in the concept of

ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Moore, 410 F.3d at 1344 (citation omitted). The answer clearly is no. E.g., City of N. Miami v. Kurtz, 653 So. 2d 1025, 1028 (Fla. 1995). While tobacco smoking may have a long history, both liberty and justice will continue to exist if smoking in a public restaurant is curtailed or precluded.

Because the FCIAA does not implicate a fundamental right, the Court reviews whether it is "rationally related to legitimate governmental interests." Moore, 410 F.3d at 1345. This is a highly deferential standard, and the Court will find a statute unconstitutional in only the most exceptional circumstances. Id. The substantive due process analysis at this point dovetails with the equal protection analysis discussed below. For the reasons stated below, the Court finds that the statutory smoking exemptions are rationally related to legitimate government interests, and therefore do not violate plaintiff's substantive due process rights.

**B.**

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction equal protection of the laws." U.S. Const. Amend. XIV, § 1. If a statutory classification infringes on fundamental rights or concerns a suspect class, the Court will analyze the statute under a strict scrutiny standard. Moore, 410 F.3d at 1346. Otherwise, "the Equal Protection Clause requires only that the

classification be rationally related to a legitimate state interest." Bah v. City of Atlanta, 103 F.3d 964, 966 (11th Cir. 1997)(citations omitted). Here, as discussed above, there is no fundamental right at stake or unduly burdened. The Court also concludes that no suspect class is involved. Suspect classifications include race, alienage, national origin, gender, and illegitimacy. Moore, 410 F.3d at 1346 (citation omitted). The Court finds that smokers are not in a suspect class. Therefore, strict scrutiny is not the applicable standard, and the Court applies the rational basis test. Id.

"In a rational basis analysis, the legislative enactment carries a 'strong presumption of validity.'" Bah, 103 F.3d at 967 (citing FCC v. Beach Commc'ns, 508 U.S. 307, 314 (1993)). Additionally, under the rational basis test the classification need only be rationally related to the achievement of some legitimate government interest. Beauclerc Lakes Condo. Ass'n v. City of Jacksonville, 115 F.3d 934, 935 (11th Cir. 1997); Panama City Med. Diagnostic Ltd. v. Williams, 13 F.3d 1541, 1545 (11th Cir. 1994). Application of the rational basis test is a two step process. First, the Court identifies a legitimate government purpose the enacting governmental body could have been pursuing. Beauclerc Lakes, 115 F.3d at 935. Second, the Court determines whether a rational basis exists to believe that the legislation would further the hypothesized purpose. Id.

Here, the Florida Constitutional amendment identifies the intended government purpose being pursued. The constitutional amendment, and the subsequent enactment of the FCIAA, were intended as a "health initiative to protect people from the health hazards of second-hand tobacco smoke, . . ." Section 20(a), Art. X, Florida Constitution. While there may be other legitimate government interests, the Court need not go beyond the one articulated by the Florida Constitution.

The second issue is whether a rational basis exists to believe that the legislation would further that purpose. "A statute is considered constitutional under the rational basis test when 'there is any reasonably conceivable state of facts that could provide a rational basis for' it." Moore, 410 F.3d at 1346 (quoting Beach Commc'ns, 508 U.S. at 313). As Lofton v. Secretary of the Department of Children and Family Services stated:

> Rational-basis review, a paradigm of judicial restraint, does not provide a license for courts to judge the wisdom, fairness, or logic of legislative choices. The question is simply whether the challenged legislation is rationally related to a legitimate state interest. Under this deferential standard, a legislative classification is accorded a strong presumption of validity, and must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. This holds true even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous. Moreover, a state has no obligation to produce evidence to sustain the rationality of a statutory classification. Rather, the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record.

358 F.3d 804, 817-18 (11th Cir. 2004), cert. denied 543 U.S. 1081 (2005)(internal quotations and citations omitted). See also Rodrequez v. United States, 169 F.3d 1342, 1350 (11th Cir. 1999). Courts must "accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations – illogical, it may be, and unscientific." Heller v. Doe, 509 U.S. 312, 321 (1993) (citation omitted).

Applying these principles, the statute easily survives constitutional challenge. Plaintiff first argues that the Legislature's consideration of economic factors in its classifications renders the statute void under the Equal Protection Clause. The Equal Protection Clause does not preclude consideration of economic factors. Quite the contrary, "the Supreme Court has clearly held that in cases involving economic classifications, the rational basis test is extremely lenient." Williams, 13 F.3d at 1545. The Eleventh Circuit quoted the following from Beach Communications, 508 U.S. at 313:

> [E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any

>     reasonably conceivable state of facts that could provide
>     a rational basis for the classification.

Williams, 13 F.3d at 1545. See also Georgia Cemetery Ass'n, Inc. v. Cox, 353 F.3d 1319, 1321 (11th Cir. 2003). When regulating economic entities a legislature must necessarily engage in line-drawing, and this "renders the precise coordinates of the resulting legislative judgment virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally." Williams, 13 F.3d at 1346 (quoting Beach Commc'ns, 508 U.S. at 308). Thus, the consideration of economic factors by the Florida legislature in constructing the FCIAA does not result in a violation of equal protection guarantees.

Second, plaintiff argues that given the stated health objective of the statute, no classifications are permitted, and it is essentially an all-or-nothing proposition. The Court disagrees. The line-drawing process in which a state legislature properly engages will not be found unconstitutional simply because the entirety of a problem is not addressed in a statute. "Thus, legislatures are not required to address all aspects of a particular problem in one fell swoop." Williams, 13 F.3d at 1546. Plaintiff's all-or-none argument has been rejected in other equal protection claims. E.g., Beauclerc Lakes, 115 F.3d at 935 ("A government is not required to provide sanitation service to all or none; . . ."). The Court concludes that the statute does not

-12-

violate the equal protection clause simply because it does not take an absolute approach to the issue of secondhand smoke.

Finally, plaintiff argues that the statute is unconstitutional because there is no legitimate distinction between its restaurant and a "stand-alone bar" in the context of the stated goal of protecting against the adverse health effects of second-hand smoke. In essence, plaintiff argues that even if classifications are permitted in the context of public health, this particular classification is impermissible. As discussed above, plaintiff must negate all rational bases for this distinction. The Court concludes that plaintiff has not done so. The Florida legislature could legitimately conclude that a restaurant is different from a stand-alone bar. At the very least, given the legal age limits for persons who can be served alcohol, the legislature could conclude that the age of a bar's clientele differs from that of a restaurant, which typically serves both adults and families, including children. Given the undisputed legitimate health care concerns of exposure to second hand smoke by children and young persons, the Florida legislature's line-drawing decision between stand-alone bars and restaurants does not offend equal protection guarantees.

Accordingly, it is now

**ORDERED:**

1.   Defendant's Amended Motion to Dismiss (Doc. #19) is **GRANTED,** and the Amended Complaint is dismissed with prejudice.

2.   The Clerk of the Court shall enter judgment accordingly, terminate all pending deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this  25th  day of August, 2006.

                                        _____
                                        JOHN E. STEELE
                                        United States District Judge

Copies:
Counsel of record